**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Rolisa T. Reid,<br><br>                               Plaintiff,<br><br>                 -v-<br><br>Metro One Loss Prevention Services Group (Guard Division NY), Inc.,<br><br>                               Defendant. | 2:23-cv-6303<br>(NJC) (ARL) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Rolisa T. Reid ("Reid") commenced this case against Defendant Metro One

Loss Prevention Services Group (Guard Division NY), Inc. ("Metro One") on August 22, 2023,

bringing claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.,

and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, et seq., relating

to the termination of her employment with Metro One.

Before the Court is Metro One's Motion to Dismiss the Amended Complaint under Rule

12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") ("Motion"). (Mot., ECF No.

17.) For the reasons set forth below, the Motion is granted in its entirety.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

because Reid brings claims under a federal statute, the ADA. (Am. Compl. ¶ 2, ECF No. 12.)

The Court has supplemental jurisdiction over the NYSHRL law claims alleged in the Amended

Complaint under 28 U.S.C. § 1367(a) because those claims are part of the same case or

controversy as the federal claims.

Metro One does not raise personal jurisdiction or insufficient service of process defenses under Rule 12(b)(2) and (b)(5), and such defenses are therefore waived. *See* Fed. R. Civ. P. 12(b) ("A motion asserting [a Rule 12(b)(2) or (b)(5) defense] must be made before pleading if a responsive pleading is allowed."); Fed. R. Civ. P. 12(h)(1)(B) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . failing to . . . make it by motion under this rule.").

Venue is proper under 28 U.S.C. § 1391(b)(2) because the Amended Complaint alleges that "a substantial part of the events . . . giving rise to [Reid's] claim[s] occurred" in this judicial district. (*See* Am. Compl. ¶ 54 (alleging that Reid was employed to work in Shirley, New York).)

## FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint and documents that are incorporated by reference or deemed integral to it as addressed below in Discussion Section II.A. *See Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (holding that, on a Rule 12(b)(6) motion to dismiss, district courts may consider "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, [and] documents not expressly incorporated by reference in the complaint that are nevertheless 'integral' to the complaint").[1]

Reid has been "diagnosed with borderline personality disorder- F60.3 and Moderate episode of recurrent major depressive disorder- F33.1 as defined by the Diagnostic and Statistical Manual of Mental Disorders (DSM-5)." (Am. Compl. ¶ 45.) On August 3, 2022, Metro One hired her to work as a security guard. (*Id.* ¶¶ 46–47.) At the time, Reid was not "told she was hired temporarily to cover for someone else." (*Id.* ¶ 55.) Reid was assigned to work at an

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

Amazon warehouse in Shirley, New York. (*Id.* ¶ 54.) She worked four days a week for a total of 32 hours a week. (*Id.* ¶¶ 48–49.)

Reid was originally scheduled to work on Wednesdays. (*Id.* ¶ 55.) On Wednesday, August 24, 2022, Reid arrived for work at Amazon and discovered that another security guard was already serving in her shift. (*Id.*) Reid contacted Desiree Dellaposta ("Dellaposta"),[2] her supervisor, who told her that Metro One had rescheduled Reid to work on Thursdays rather than Wednesdays. (*Id.*) Reid told Dellaposta that she was unaware of the schedule change and that she did not agree to it. (*Id.*) Dellaposta stated that she had called Reid over the weekend, but that Reid had not answered the call. (*Id.*) Reid told Dellaposta that she "didn't not see the call since [she] was struggling with mental health challenges and mental health suffering over the weekend." (*Id.*)[3] Dellaposta told Reid "that [Reid's] personal life was not her business and there was nothing she would do about the situation." (*Id.*) Reid asked Dellaposta to contact Anh-Tuan,[4] the Amazon area manager, who was not answering Reid's calls. (*Id.*) Dellaposta informed Reid that "Anh-Tuan was off and would most likely not answer." (*Id.*)

That same day, Reid sent the following text message to Dellaposta and Anh-Tuan:

> I was told my schedule was Sunday- Wednesday. Not that I was covering. Not that it was temporary. Not that it would change. Now all of a sudden you're coming out of nowhere saying I can't work on that day and you're trying to push a different day on me that I am not available for. You already don't give 40 hours now you're trying to further cut my hours. I have already expressed to

---

[2] The Amended Complaint uses the spellings "Dellaposta" and "Dellaposa." I understand both of these spellings to be referring to the same person.

[3] Despite the use of a double negative, based on the arguments made in Reid's brief in opposition to the Motion to Dismiss, I understand that the Amended Complaint seeks to allege that Reid did not see Dellaposta's call over the weekend. (*See* Opp'n at 10.)

[4] The Amended Complaint does not indicate whether "Anh-Taun" is the Amazon area manager's first name or surname. (*See* Am. Compl. ¶¶ 31–37, 55, 57–58.)

[Dellaposta] the mental health challenges I've been trying to deal and now you are adding to it and can't be bothered to care. Because "you're personal life is not my business" as [Dellaposta] said. I want to speak to HR or the guy higher than you.

(Three-Way Text Msgs., ECF No. 18 at 1.)[5]

Dellaposta and Anh-Tuan called Reid later that same day. (Am. Compl. ¶ 55.) During a three-way call, Reid stated that "she could not work on Thursdays because she was keeping Thursdays to visit her grandfather, who was diagnosed with cancer." (*Id.*) She told them "that [she] wanted to spend more time with her grandfather since her grandfather was diagnosed with cancer and that she would also take that day as a break to relieve [sic] herself from her mental issues since [she] and her grandfather were trying to support each other." (*Id.*) During the call, Anh-Tuan told Reid that she "was hired temporarily to cover for someone else." (*Id.*)

On August 25, 2022, Dellaposta messaged with Derek Troxler, another employee of both Metro One and Amazon, confirming that "Reid's badge was deactivated." (Dellaposta Troxler Msgs., ECF No. 17-10; Am. Compl. ¶ 56.)[6] On August 27, 2022, Reid texted Dellaposta and Anh-Tuan but did not receive a response from either of them. (Am. Compl. ¶ 57.)

On August 28, 2022, Reid arrived for work at Amazon and saw that another security guard was already there. (*Id.* ¶ 58.) Reid "attempted to reach out to Anh-Tuan and Desiree

---

[5] The text messages between Reid, Dellaposta, and Anh-Tuan are attached to both the Sekendiz Declaration and the Reid Declaration. (Sekendiz Declaration Ex. 3, ECF No. 18; Reid Declaration at 3–5, ECF No. 17-14.) As discussed below, I may consider these text messages because they incorporated by reference into the Amended Complaint. *See supra* Discussion § II.A.

[6] The text messages between Dellaposta and Troxler are attached both to the Sekendiz Declaration and the Reid Declaration. (Sekendiz Declaration Ex. 2, ECF No. 17-10; Reid Declaration at 6.) As discussed below, I may consider these text messages because they incorporated by reference into the Amended Complaint. *See supra* Discussion § II.A.

Dellaposa for almost 2 hours while trying to figure out the mix up." (*Id.*) At around 1:00 AM, Reid received a call from Anh-Tuan, who told her that he could not give her a schedule. (*Id.*) Reid then called Dennis Gomas ("Gomas"), her "performance manager" at Metro One. (*Id.*) Gomas confirmed that Reid was terminated and indicated that she was "at fault because [she] did not pick up the phone." (*Id.*)

A screenshot of Reid's work schedule taken on September 11, 2022, after her termination, shows that Reid was scheduled to work on Sunday, Monday, Tuesday, and Thursday during the week of August 24, 2022. (Schedule, ECF No. 17-11.)[7]

## PROCEDURAL HISTORY

On August 22, 2023, Reid filed the Complaint in this action, bringing disability discrimination, associational discrimination, and retaliation claims under both the ADA and NYSHRL and a hostile work environment claim under the NYSHRL. (Compl., ECF No. 1.) On November 29, 2023, Metro One filed a letter motion requesting a pre-motion conference concerning its anticipated motion to dismiss the Complaint, and on December 5, 2023, Reid responded. (ECF Nos. 7, 9.) On December 14, 2023, I found that a pre-motion conference was not necessary and ordered a briefing schedule for the motion. (ECF No. 10.) Pursuant to that schedule, Defendants were to serve their motion on January 13, 2024. (*Id.* at 1.) On January 10, 2024, Defendants filed a letter requesting an extension of time to serve their motion. (ECF No. 11.) I granted that request, adjourning to January 26, 2024, the deadline for Metro One to serve

---

[7] The schedule is attached both to the Sekendiz Declaration and the Reid Declaration. (Sekendiz Declaration Ex. 4, ECF No. 17-12; Reid Declaration at 7–8.) As discussed below, I consider the schedule because it is incorporated by reference into the Amended Complaint. *See supra* Discussion § II.A.

its motion, and adjourning to February 26, 2024, Reid's deadline to either file an amended

complaint or serve Metro One with an opposition. (Elec. Order, Jan. 11, 2024.)

Rather than oppose Metro One's January 26, 2024 motion to dismiss, Reid filed the

Amended Complaint on February 12, 2024. (Am. Compl.) The Amended Complaint brings four

causes of action encompassing six distinct claims. (Am. Compl. ¶¶ 83–98.) The first cause of

action sets forth Reid's ADA disability discrimination claim as well as a separate ADA

associational discrimination claim based on the allegation that Metro One engaged in

"discrimination against Plaintiff because Plaintiff is associated with a disabled family member

(grandfather)." (*Id.* ¶¶ 68, 83–89.) The parties' briefing on Metro One's Motion to Dismiss the

Amended Complaint confirms this understanding. (*See* Mem. at 13–16, ECF No. 17-7; Opp'n at

17–18, ECF No. 17-14.) The second cause of action sets forth Reid's ADA retaliation claim.

(Am. Compl. ¶¶ 90–93.) The third cause of action sets forth Reid's NYSHRL disability

discrimination and hostile work environment claims. (*Id.* ¶¶ 93–95.) The fourth cause of action

sets forth Reid's NYSHRL retaliation claim. (*Id.* ¶¶ 96–98.)

On March 1, 2024, Metro One filed a letter requesting a pre-motion conference

concerning its anticipated motion to dismiss the Amended Complaint, and Reid responded on

March 7, 2024. (ECF Nos. 14, 15.) I again found that a pre-motion conference was not necessary

and ordered a briefing schedule for the motion. (Elec. Order, March 20, 2024.)

On May 31, 2024, Metro One filed its fully-briefed Motion to Dismiss the Amended

Complaint. (Mem.; Opp'n; Reply, ECF No. 17-15.) The fully-briefed motion includes the

following submissions:

(1) Metro One's memorandum of support (Mem.);

(2) the declaration of Metro One's counsel, Amy M. Monahan, and an attached exhibit containing a copy of the Amended Complaint (Monahan Decl., ECF No. 17-1; ECF No. 17-2);

(3) the declaration of Metro One's Vice President of Human Resources, Kelli Springfield (Springfield Decl. ECF No. 17-3), and attached exhibits, including

    (A) the "New Hire Information Form" filed out by Reid and dated August 1, 2022 (New Hire Form, ECF No. 17-4),

    (B) copies of Metro One's clock-in and clock-out records for the duration of Reid's employment (Clock-in Records, ECF No. 17-5), and

    (C) copies of text messages sent by Reid to Anh-Tuan on August 24 and August 26, 2022 (Anh-Tuan Text Msgs., ECF No. 17-6);

(4) Reid's memorandum in opposition (Opp'n.);

(5) the declaration of Reid's counsel, Ismail Sekendiz (Sekendiz Decl., ECF No. 17-8), and attached exhibits, including:

    (A) a copy of the Amended Complaint (ECF No. 17-9),

    (B) a screenshot of messages between Dellaposta and Troxler (also attached to the Reid Declaration) (Dellaposta Troxler Msgs., ECF No. 17-10),

    (C) copies of the August 24, 2022 text messages sent by Reid to Dellaposta and Anh-Tuan (also attached to the Reid Declaration) (Three-Way Text Msgs.), and

    (D) a copy of Reid's work schedule for the month of August 2022 (also attached to the Reid Declaration) (Schedule Screenshot, ECF No. 17-11); and

(6) Reid's declaration and attached exhibits (Reid Decl., ECF No. 17–13); and

(7) Metro One's reply brief (Reply).

## LEGAL STANDARDS

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*,

84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *accord Schiebel v. Schoharie Central Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

### I.    Article III Standing

In addition to compensatory and punitive damages, the Amended Complaint seeks a declaration "that [Metro One] engaged in unlawful employment practices prohibited by the ADA, and NYSHRL,, [sic] by discriminating against [Reid] on the basis of her disability," and any "such other and further relief as the Court may deem equitable, just and proper to remedy [Metro One's] unlawful employment practices." (*Id.* at 11–12.)

A court has no subject matter jurisdiction to hear a claim where the plaintiff lacks standing under Article III of the Constitution. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC.*, 433 F.3d 181, 198 (2d Cir. 2005). "Because the question of standing goes to the constitutional limitations on the judicial Power of the United States," courts "are entitled at any time sua sponte to delve into the issue of standing even if

defendants do not raise the issue." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021).

In order to establish Article III standing, a plaintiff must show: "(1) that they suffered an injury in fact, (2) that the injury is fairly traceable to [d]efendants' challenged conduct, and (3) that the injury is likely to be redressed by a favorable judicial decision." *Soule v. Conn. Ass'n of Schs.*, 90 F.4th 34, 45 (2d Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A "plaintiff[] must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)). Where a "plaintiff[] seek[s] injunctive *or declaratory relief*, they cannot rely on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the future." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (emphasis added). "Such an allegation of future injury will be sufficient only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The Amended Complaint alleges facts to support Reid's standing to seek damages for claims under the ADA and the NYSHRL. Reid has alleged an injury in fact that is traceable to Metro One's alleged conduct—Metro One's termination of her employment. Am. Compl. ¶ 59; *see Soule*, 90 F.4th at 45. If Reid were to prevail on her ADA or NYSHRL claims, the requested damages would likely redress her injury by providing compensation for alleged harms and, with respect to punitive damages, by deterring future unlawful conduct. *See Soule*, 90 F.4th at 47 ("To satisfy the redressability element of Article III standing, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision.'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992))).

The Amended Complaint fails, however, to allege any facts that support Reid's standing to seek injunctive and declaratory relief for any claims. Most significantly, it does not allege that Reid continues to sustain any injury, or that she is likely to be injured again in the future, by Metro One's alleged unlawful conduct. The Amended Complaint does not allege that, at any point after the termination of her employment, Reid asked Metro One for the opportunity to rejoin Metro One or applied to work for them in any capacity.

This case is therefore similar to *Dorce*, where the Second Circuit affirmed the dismissal of injunctive and declaratory relief claims due to the plaintiffs' failure to allege ongoing or future harm that would support Article III standing. 2 F.4th at 88. In *Dorce*, the plaintiffs challenged a local law that authorized New York City to transfer ownership of foreclosed properties "free of charge to designated partners, who develop and manage the properties" and sought a declaration that the local law was unconstitutional. *Id.* at 87–88, 95. Although the plaintiffs alleged that properties they had owned had been foreclosed upon in rem and transferred to a third party pursuant to this local law, they failed to "demonstrate[] that they will be subject to future harm" because they "could not show that they owned property that was likely to be transferred in the future" under the law. *Id.* at 90–91, 93, 95. Thus, while the plaintiffs had alleged past harms, the Second Circuit held that they lacked standing to seek injunctive or declaratory relief. *Id.* at 88.

Like the *Dorce* plaintiffs, Reid has alleged that she was injured in the past by Metro One's challenged conduct—specifically, Metro One's acts sustaining an alleged hostile work environment during Reid's employment and its decision to terminate her employment—but has not alleged any current injury or facts supporting the conclusion that she faces a substantial risk of future injury or any future injury that is certainly impending. *See id.* at 95 ("Such an allegation of future injury will be sufficient only if 'the threatened injury is certainly impending,

10

or there is a substantial risk that the harm will occur.'" (quoting *Susan B. Anthony List*, 573 U.S. at 158)). The Amended Complaint alleges that due to Metro One's alleged conduct, Reid "feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed," (Am. Compl. ¶ 78), but "[t]he emotional consequences of a prior act" are "simply . . . not a sufficient basis for [equitable relief] absent a real and immediate threat of future injury by the defendant," *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983). Additionally, the Amended Complaint's allegation that Reid "will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation" (Am. Compl. ¶ 80) is based on Metro One's alleged past conduct and does not support standing to seek injunctive or declaratory relief. Finally, Reid's request for a declaration that Metro One "engaged in unlawful employment practices prohibited by the ADA, and NYSHRL" stands in contrast to the prospective nature of relief in the form of a declaratory judgment. (Am. Compl. at 11.) Decisions of this Court have emphasized that declaratory relief is prospective in nature and that Article III standing to seek such relief must be based on allegations of current or future harm. *See, e.g.*, *Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 204 (E.D.N.Y. 2025); *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021). Because the Amended Complaint fails to plausibly allege that Metro One continues to injure Reid, that there is a substantial risk that future injury will occur, or that she faces threatened injury that is certainly impending, the Amended Complaint fails to establish Article III standing for Reid's claims for declaratory and injunctive relief under the ADA and the NYSHRL. *See Dorce*, 2 F.4th at 95.

Reid's request for declaratory and injunctive relief is therefore dismissed without prejudice for lack of subject matter jurisdiction. *Merck-Medco Managed Care*, 433 F.3d at 198;

*Plante*, 621 F. App'x at 69; *see also Brown*, 762 F. Supp. 3d at 204; *Greene v. Northwell Health Inc.*, No. 23-cv-4846, 2024 WL 4287875, at *7–9 (E.D.N.Y. Sept. 25, 2024).

## II.    Failure to State a Claim

Metro One moves to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state any claim under the ADA or NYSHRL. Specifically, Metro One argues that the Amended Complaint fails to plead a plausible claim that Reid was terminated because of her disability or in retaliation for objecting to a denial of her request for a reasonable accommodation for a disability and that Reid did not, in fact, request any reasonable accommodations for a disability. (Mem. at 6–18.) Metro One also argues that Reid has failed to allege facts adequate to state a NYSHRL hostile work environment claim. (*Id.* at 18–20.)

As explained below, I dismiss all claims brought in the Amended Complaint under Rule 12(b)(6).

### A.    Facts Outside the Amended Complaint

As noted, in resolving a Rule 12(b)(6) motion to dismiss, "district courts may review only a narrow universe of materials, which includes facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, [and] documents . . . integral to the complaint." *Clark*, 89 F.4th at 93; *see also In Re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 41 (2d Cir. 2025). A court therefore "errs when it considers affidavits and exhibits submitted by defendants" or "factual allegations contained in legal briefs or memoranda" unless those materials fall into one of the exceptions identified above. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106–07 (2d Cir. 2021).

12

To be incorporated by reference, the complaint must make "a clear, definite and substantial reference" to the documents. *Trump v. Vance*, 977 F.3d 198, at 210 n.8 (2d Cir. 2020). "[A] mere passing reference" to a document is insufficient to incorporate the document into the complaint. *Id.*; *see also Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011). A document "may be deemed integral to the complaint when the complaint relies heavily upon its terms and effect." *Clark*, 89 F.4th at 93 n.18.

Metro One argues that I can consider the following exhibits attached to the Springfield Declaration when analyzing its arguments for dismissal under Rule 12(b)(6): (1) the August 1, 2022 "New Hire Information Form" completed by Reid, (2) copies of Metro One's clock-in and clock-out records for the duration of Reid's employment, and (3) copies of text messages from Reid to Anh-Tuan on August 24 and August 26, 2022. (Mem. at 9; New Hire Form; Clock-in Records; Anh-Tuan Text Msgs.) According to Metro One, these records are "incorporated by reference in the Complaint and/or are documents Plaintiff knew of and relied upon when she brought the suit." (Mem. at 9.) Reid does not address this argument in her opposition brief.

In opposing Metro One's Motion, Reid, herself, relies on facts drawn from documents attached to the Sekendiz Declaration—none of which are attached to the Amended Complaint. Specifically, Reid cites a screenshot of text messages between Dellaposta and Troxler, text messages allegedly sent by Reid to Dellaposta and Anh-Tuan, and a screenshot of Reid's work schedule at Metro One/Amazon for the week of August 24, 2022. (Opp'n at 14–16, 18; *see also* Dellaposta Troxler Msgs., Three-Way Text Msgs.; Schedule Screenshot.) Reid does not address why I should consider these documents, much less provide any legal authority demonstrating that I am permitted to consider these documents in resolving Metro One's Rule 12(b)(6) motion. On

reply, Metro One does not object to my consideration of the exhibits on which Reid relies in her opposition brief.

I do not consider any of the documents attached as exhibits to the Springfield Declaration, which Metro One offers in support of its Rule 12(b)(6) Motion. None of those documents—the August 1, 2022 New Hire Information Form, copies of Reid's Metro One clock-in and clock-out records, and copies of the August 24 and August 26, 2022 text messages from Reid to Anh-Tuan—are attached to the Amended Complaint. Nor are they public documents of which the Court may take judicial notice. The Amended Complaint makes no reference to these documents, let alone "a clear, definite and substantial reference" sufficient to incorporate these documents by reference. *Trump*, 977 F.3d at 210 n.8. Finally, because the Amended Complaint does not rely on these documents at all, they are not integral to the Amended Complaint. *See Clark*, 89 F.4th at 93 n.18.

With respect to the documents upon which Reid relies in her opposition brief, I may consider them as either incorporated by reference in the Amended Complaint or integral to it. First, the screenshot of messages between Dellaposta and Troxler are incorporated by reference in paragraph 56 of the Amended Complaint, which alleges that:

> Dellaposa sent an email to Derek [Troxler,] an employee of both the defendant and amazon[,] indicating "Derek, Just wanted to make sure Rolisa Reid's badge was deactivated." Derek responded "Hi Desiree, the badge was deactivated. It will not work on the doors."

(Am. Compl. ¶ 56.) The content of the messages described in paragraph 56 is almost identical to the actual text of the messages attached to the Sekendiz Declaration. (*See* Dellaposta Troxler Msgs.) Accordingly, the Amended Complaint makes "a clear, definite and substantial reference" to these messages between Dellaposta and Troxler, and I may consider them in resolving the Rule 12(b)(6) Motion. *Trump*, 977 F.3d at 210 n.8.

Second, I may consider text messages allegedly sent by Reid to Dellaposta and Anh-Tuan on August 24, 2022 as incorporated by reference in the Amended Complaint, which alleges that "on or about August 24 2022, plaintiff sent a text message to Desiree Dellaposa and Anh-Tuan" and provides the content of the first message on the screenshot. Am. Compl. ¶ 55; *see* Three-Way Text Msgs. at 1; *Trump*, 977 F.3d at 210 n.8.

Third, I may consider the screenshot of Reid's work schedule for the month of August 2022 because it is integral to the Amended Complaint. Specifically, the Amended Complaint alleges that Reid worked at Metro One from August 3 to August 25, 2022, references Reid's work schedule during that time, alleges that Reid objected to Defendants' changes to her work schedule, and alleges that Reid was terminated in retaliation for making that objection. (Am. Compl. ¶¶ 47, 55, 58–59, 97–98.) Accordingly, the screenshot of Reid's work schedule is integral to the Amended Complaint, and I may consider it in resolving the Rule 12(b)(6) Motion. *Clark*, 89 F.4th at 93 n.18.

B.   The ADA Discrimination Claims

### i. *Disparate Treatment Claim*

Metro One argues that Reid's ADA disparate treatment fails for three reasons. First, it contends that the Amended Complaint fails to plausibly plead that Reid suffered an adverse employment action because of her disability, as required to state an ADA disparate treatment claim. Metro One argues that "there are no well-pled facts in the Complaint making it plausible that Reid was terminated because of a disability," that Reid's schedule was changed *prior* to the disclosure of her disability to Metro One, and that Reid admits that she was terminated for failing

to take her supervisor's call. (Mem. at 7.)[8] Second, Metro One argues that the Amended Complaint does not provide minimal support for the allegation that Reid was actually terminated on August 25, 2022 or for the allegation that her termination was the result of discriminatory intent. (Reply at 3–5.) Third, Metro One asserts that Reid's door access card was "turn[ed] off" because she "refused to work on a day that she had been scheduled to work and was a no call/no show on that date" and because of the text messages she sent on August 24, 2022, "making demands of her supervisors" (*Id.* at 5.)

In opposition, Reid argues that the Amended Complaint states a plausible ADA disparate treatment claim because it alleges that: (1) Metro One is an ADA covered entity because it exceeds 100 employees; (2) that Reid has a disability under the ADA; (3) that Reid was qualified to perform the essential functions of her job with Metro One; and (4) that Reid suffered an adverse employment action in the form of termination because of her disability. (Opp'n at 9–11.)

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To survive a motion to dismiss, a plaintiff bringing an ADA disparate treatment claim must plausibly allege that "(1) [the] employer is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) [the plaintiff] was otherwise qualified to perform the essential functions of [the] job, with or without reasonable accommodation; and

---

[8] Metro One also asserts that Reid had told Metro One when she was hired that she could work any day of the week, that she did not have a set schedule, and that her hours were not in fact cut. (Mem. at 8–9.) Because these assertions rely on facts set forth in the Springfield Declaration, the New Hire Information Form, and copies of Metro One's clock-in and clock-out records for Reid, none of which are attached or integral to, or incorporated by reference in, the Amended Complaint, I need not consider them in addressing Metro One's Rule 12(b)(6) motion. *See supra* Discussion § II.A; *Clark*, 89 F.4th at 93; *In Re Shanda Games Ltd. Sec. Litig.*, 128 F.4th at 41.

(4) [the plaintiff] suffered adverse employment action because of [her] disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020); *see also Patel v. NYU Langone Hosps.*, No. 20-112-cv, 2021 WL 4852426, at *2 (2d Cir. 2021) (summary order) (applying *Woolf* standard on motion to dismiss). Accordingly, at the Rule 12(b)(6) stage, facts in the complaint must plausibly support "that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Concerning the second element, a plaintiff has a "disability" under the ADA if they have "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) [are] regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 168 (2d Cir. 2024) (holding that "[to be] regarded as" having a disability means "[to] be perceived as different from most people in the general population").

Concerning the "adverse employment action" requirement, I consider the application of the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). In *Muldrow*, the Supreme Court held that a plaintiff bringing a Title VII discrimination claim "does not have to show . . . that the harm incurred was significant[,] . . . serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. Rather, the plaintiff only needs to show "some harm respecting an identifiable term or condition of employment"—i.e., the plaintiff must have been "left [] worse off" but not necessarily "significantly so." *Id.* at 355, 359. Although the Second Circuit has not addressed the application of the *Muldrow* standard for an adverse action in the context of an ADA disparate

treatment claim, district courts in this Circuit and several Courts of Appeal have applied the *Muldrow* standard in this context. *See, e.g., Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 90–91 (S.D.N.Y. 2024) (collecting decisions of Courts of Appeals other than the Second Circuit); *Slater v. NYU Langone Health Sys.*, No. 24-cv-3711, 2025 WL 2208292, at *5 (E.D.N.Y. Aug. 4, 2025); *Ciotti v. City of New York*, No. 23-cv-10279, 2025 WL 308022, at *13 (S.D.N.Y. Jan. 27, 2025).

Under the fourth element of an ADA disparate treatment claim, a plaintiff must allege facts making it plausible that she suffered an adverse employment action in part "because of" her disability. *See Witcher v. New York City Dep't of Educ.*, No. 23-cv-465, 2024 WL 3220264, at *1 (2d Cir. June 28, 2024) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 348–50 (2d Cir. 2019) ("[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action.")); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir. 2000) (explaining that the ADA "cover[s] situations in which discrimination on the basis of disability is one factor, but not the only factor, motivating an adverse employment action"). If an employer "were truly unaware that" a plaintiff had a disability under the ADA, "it would be impossible for [the] hiring decision to have been based, even in part, on [plaintiff]'s disability." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 n.7 (2003).

The Amended Complaint alleges that Metro One terminated Reid due to her disability. (Am. Compl. ¶ 73.) The parties do not dispute that the Amended Complaint alleges facts sufficient to plead the first three elements of an ADA disparate impact claim. But they dispute whether the Amended Complaint adequately pleads the fourth element—that Metro One terminated Reid "because of" her disability as required under the ADA.

18

Although the Amended Complaint pleads an adverse action—that Metro One terminated Reid—it fails to offer factual allegations supporting a reasonable inference that Metro One was aware of Reid's disability and terminated Reid "because of" it. *Witcher*, 2024 WL 3220264, at *1; *Natofsky v*, 921 F.3d at 348–50. The Amended Complaint alleges that Reid communicated with her Metro One supervisors on three separate occasions on August 24, 2022, during which Reid disclosed to them that she was generally experiencing "mental health challenges," but the Amended Complaint does not plausibly allege that Reid disclosed her disability to her supervisors.

First, the Amended Complaint alleges that, on August 24, 2022, Reid told Dellaposta that she did "not see" Dellaposta's call because she "was struggling with mental health challenges and mental health suffering over the weekend." (Am. Compl. ¶ 55.) Second, the Amended Complaint alleges that, when Reid followed up with Dellaposta and Anh-Tuan that same day, Reid repeated that she was dealing with "mental health challenges" and told them that they were "adding to it" and that they "can't be bothered to care." (*Id.*; *see also* Three-Way Text Msgs.) Third, Reid participated in a three-way phone call with Dellaposta and Anh-Tuan later that same day and informed them that "she could not work on Thursdays because she was keeping Thursdays to visit her grandfather, who was diagnosed with cancer," and that spending time with him would relieve her own mental health issues. (*Id.*) The Amended Complaint does not allege that during any of these three conversations on August 24, 2022—or at any other time—Reid informed Metro One that she has a disability, much less the specific disabilities at issue: borderline personality disorder and recurrent major depressive disorder. Moreover, at no point does the Amended Complaint allege that Metro One recorded Reid as having a disability,

borderline personality disorder, or recurrent major depressive disorder or that Metro One "regarded" Reid "as having such . . . impairment[s]." 42 U.S.C. 12102(1)(C).

The Amended Complaint alleges that after Reid told Dellaposta that she did not see Dellaposta's call over the weekend and had been struggling with mental health challenges, Dellaposta responded that Reid's "personal life was not her business." (Am. Compl. ¶ 55.) Even this allegation in combination with other allegations in the Amended Complaint does not plausibly allege that Dellaposta knew of Reid's disability, recorded Reid as having a disability, or regarded Reid as disabled.

The Amended Complaint makes the conclusory allegations that Metro One "discriminated against Plaintiff *because* Plaintiff is disabled," and that Metro One "terminated Plaintiff within a week of Plaintiff *disclosing* her disability." (Am. Compl. ¶¶ 62, 64 (emphasis added).) These allegations are unsupported and amount to "[n]aked assertions of discrimination," which, "without any specific allegation of a causal link between" Metro One's termination of Reid's employment and any purported awareness of Reid's disability, "are too conclusory to withstand a motion to dismiss." *Mitchell*, 745 F. Supp. 3d at 91–92.

Because the Amended Complaint fails to plausibly allege that Metro One knew of Reid's disability, recorded Reid as having a disability, or regarded Reid as having a disability, it is implausible that Metro One terminated Reid "because of" her disability as required to plead an ADA disparate treatment clam. *Woolf*, 949 F.3d at 93; *see also Natofsky* , 921 F.3d at 348–50 (requiring but-for causation for ADA claim); *Witcher*, 2024 WL 3220264, at *1 (same); *Raytheon*, 540 U.S. at 55 n.7 (holding an employer's lack of awareness of a plaintiff's disability renders "it . . . impossible for [the] hiring decision to have been based, even in part, on [plaintiff]'s disability").

20

Accordingly, the Amended Complaint fails to plausibly allege an ADA disparate treatment claim, and this claim is dismissed under Rule 12(b)(6).

### ii.  Failure to Accommodate Claim

Metro One argues that the Amended Complaint fails to plead an ADA failure-to-accommodate claim because it does not allege that she requested any reasonable accommodation for a disability. (Mem. at 9–10.) First, Metro One argues that Reid's request to not be scheduled to work on Thursdays is not a request for a reasonable accommodation because it required Metro One to eliminate the essential job function of attendance. (*Id.* at 10.) Second, Metro One asserts that Reid told her supervisor she was experiencing "mental health challenges . . . *after* her schedule was changed" (*Id.* (emphasis in original).) Third, Metro One argues that since Reid had access to her work schedule and worked on August 21, 22, and 23, 2022, she should have known that she was not scheduled to work on August 24, 2022 before she arrived at work that day. (*Id.* at 11.) Fourth, Metro One contends that "wanting to keep a day off from work . . . does not rise to the level of asking for an accommodation." (*Id.*)[9]

---

[9] In its arguments for dismissal of Reid's ADA failure-to-accommodate and retaliation claims, Metro One asserts that Reid did not allege in her "Complaint filed with the EEOC" that "she had a set [work] schedule" that did not include Thursdays and that she told supervisors that "she could not work on Thursdays because she was keeping Thursdays to visit her grandfather." (Opp'n at 10–11, 17 (citing Am. Compl. ¶ 55).) Reid's EEOC Complaint is not attached to the Amended Complaint and no party has shown that it is incorporated by reference in or integral to the Amended Complaint as required for the Court to consider it in resolving Metro One's Rule 12(b)(6) motion. *Clark*, 89 F.4th at 93. Accordingly, I do not reach this argument.

With respect to Reid's failure-to-accommodate claim, Metro One also argues that Reid "stated on her employment application that she was able to perform the duties of an unarmed security officer position without a reasonable accommodation and did not require a reasonable accommodation to perform those job duties." (Mem. at 11.) Because this assertion relies on facts outside the Amended Complaint, specifically, facts set forth in the Springfield Declaration and the New Hire Information Form, I do not consider them in addressing Metro One's Rule 12(b)(6)

In response, Reid argues that she made two independent requests for reasonable accommodations for her disabilities. First, she requested that Metro One "not discipline" her for her "failure to see [Dellaposta's] call." (Opp'n at 11.) Second, she asserts that she requested not to work on Thursdays so that she could spend time with her grandfather, who had been diagnosed with cancer, which would help relieve her mental health issues. (*Id.*) Reid asserts that her first request—to not be disciplined for not seeing Dellaposta's call over the weekend—meets the minimal burden required of plaintiffs to show that the requested accommodation "seems reasonable on its face." (*Id.*) Reid also asserts that since Congress "expressly include[d] part-time schedules in the statutory list of reasonable accommodations, plaintiffs," like Reid, who "request[] part-time schedule accommodations or tak[e] certain days off do not even need to make th[e] minimal showing" that the requested accommodation "seems reasonable on its face," as required under the standard set forth in *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). (*Id.* at 11.) According to Reid, because Metro One has not argued that giving her Thursdays off would be an undue hardship, Defendants' motion to dismiss the ADA accommodations claim should be denied. (*Id.* at 12.)

On reply, Metro One reiterates the arguments made in its moving brief and makes four additional arguments. First, it argues that I should not consider Reid's contention that she requested a reasonable accommodation by asking not to be disciplined for not seeing Dellaposta's call over the weekend because the Amended Complaint does not allege that Reid requested an accommodation for "not being able to see the phone call due to her mental health suffering over the weekend" and because Reid made this argument for the first time in

---

motion. *See supra* Discussion § II.A; *Clark*, 89 F.4th at 93; *In Re Shanda Games Ltd. Sec. Litig.*, 128 F.4th at 41.

opposition to Metro One's motion to dismiss. (Reply at 4) Second, Metro One argues that Reid fails to explain how she was able to see the work schedule for Sunday, Monday, and Tuesday of the week of August 24, 2022, but not for Wednesday of that week. (*Id.*) Third, Metro One argues that Reid did not request a "modified work schedule to get treatment during work hours for her alleged disability," so her request not to work on Thursdays cannot be considered a request for a reasonable accommodation. (*Id.*) Finally, Metro One asserts that Reid was not terminated and that her door access card was turned off because of her refusal to show up for work on August 25, 2022 and her August 24, 2022 text messages "making demands of her supervisors." (*Id.* at 5.)

The ADA prohibits an employer from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee . . . ." 42 U.S.C. § 12112(b)(5)(A); *see also Tudor v. Whitehall Central Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025).To survive a motion to dismiss an ADA failure-to-accommodate claim, a plaintiff must plausibly allege that: "(1) [the] employer is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) [the plaintiff] was otherwise qualified to perform the essential functions of [the] job, with or without reasonable accommodation; and (4) [the plaintiff's] employer refused to make a reasonable accommodation." *Tudor*, 132 F.4th at 246 (quoting *Woolf*, 949 F.3d at 93). The plaintiff must also plausibly allege that the defendant "employer knew or reasonably should have known that the [plaintiff] employee was disabled." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008); *see also Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (applying the same standard to a motion to dismiss a Rehabilitation Act failure-to-accommodate claim). "A reasonable accommodation is one that 'enables an individual with a disability who is qualified to perform the essential functions of that position or to enjoy equal benefits and

privileges of employment.'" *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting 29 C.F.R. § 1630.2(o)(1)(ii), (iii)). "[E]mployers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Id.* at 95.

Metro One does not dispute that the Amended Complaint's allegations establish the first three elements of an ADA failure-to-accommodate claim: that Metro One is subject to the ADA, that Reid was disabled within the meaning of the ADA, and that Reid was otherwise qualified to perform the essential functions of her job as a security guard at Amazon. (*See generally* Mem.) The parties disagree, however, over whether the Amended Complaint plausibly alleges that Metro One refused to make a reasonable accommodation for Reid's disability.

The Amended Complaint fails to plead a plausible ADA failure-to-accommodate claim because, as discussed above in connection with the disparate treatment claim, it fails to allege facts rendering it plausible that Metro One *knew* or *reasonably should have known* of Reid's disability. The ADA only prohibits an employer from "not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee . . . ." 42 U.S.C. § 12112(b)(5)(A). As discussed above, the Amended Complaint does not offer any factual allegations that Reid informed Dellaposta, Anh-Taun, or anyone else at Metro One of the fact that she is disabled or of her specific disabilities, or that Metro One otherwise recorded Reid as a person with a disability or regarded her as a person with a disability. *See supra* Discussion § II.B.i. In the absence of any factual allegations that would support a reasonable inference that Metro One knew or reasonably should have known that Reid was disabled, it is implausible that Metro One failed to make reasonable accommodations for the "known physical or mental limitations" impacting Reid. 42 U.S.C. § 12112(b)(5)(A).

24

Accordingly, the Amended Complaint fails to plead a plausible failure-to-accommodate claim on this basis alone. *See Brady*, 531 F.3d at 135.

Furthermore, the failure-to-accommodate claim does not survive Metro One's Rule 12(b)(6) Motion because the Amended Complaint does not plausibly allege that Reid made any specific request to Metro One for an accommodation for her disability. Although Reid contends that she made two such requests by asking that she not be disciplined for not answering Dellaposta's call over the weekend and that she not be scheduled to work on Thursdays, neither of these requests constitute a plausible request for a reasonable accommodation for her disability for the following reasons.

With respect to Reid's argument that she requested a reasonable accommodation by asking not to be disciplined for failing to "see" Dellaposta's phone calls during the weekend prior to August 24, 2022 (the day on which Reid arrived at work and found another security guard working her shift), the Amended Complaint does not make any such allegation. (*See generally* Am. Compl.) Reid argues for the first time in her brief in opposition to Metro One's Motion to Dismiss that this request constitutes a request for a reasonable accommodation for disability. (Opp'n. at 11.) Because this failure-to-accommodate theory does not appear on the face of the Amended Complaint and is raised for the first time in an opposition brief, I do not consider it. *See Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 698 F. Supp. 3d 663, 677 (S.D.N.Y. 2023) (finding plaintiff's new theory raised for the first time in opposition to defendant's motion untimely and improper); *Pandozy v. Segan*, 518 F.Supp.2d 550, 554 n.1 (S.D.N.Y. 2007) (collecting cases).

Moreover, even were I to consider this argument, it is unpersuasive. "[I]t is the responsibility of the individual with a disability to inform the employer that an accommodation is

needed." *Brady*, 531 F.3d at 135; *see also Costabile*, 951 F.3d at 81. The Amended Complaint alleges that Reid "advised" Dellaposta that she did "not see the call [from Dellaposta] since [Reid] was struggling with mental health challenges and mental health suffering over the weekend." (Am. Compl. ¶ 55.) It does not contain *any* allegation that Reid requested not to be disciplined for failing to see Dellaposta's call. Instead, it alleges only that Reid sent a text message to Dellaposta and Anh-Tuan on August 24, 2024 asking to "speak to HR or the guy higher than you." (*Id.*; *see also* Three-Way Msg. at 1.) Without any allegation in the Amended Complaint that Reid asked Metro One for an accommodation in the form of not being disciplined for not answering Dellaposta's weekend phone call, the failure-to-accommodate claim based on this theory fails. *See Geer v. Gates Chili Cent. Sch. Dist.*, 577 F. Supp. 3d 147, 170 (W.D.N.Y. 2021) (granting summary judgment to defendants on plaintiff's ADA failure to accommodate claim because plaintiff failed to request an accommodation).

With respect to Reid's argument that she asked Metro One for a reasonable accommodation by asking not to work on Thursdays in order to spend time with her ill grandfather and to gain his support for her mental health challenges, this theory is not plausible in light of the allegations of the Amended Complaint. Although the ADA recognizes that a "reasonable accommodation may include . . . job restructuring, part-time or modified work schedules," 42 U.S.C. § 12111(9)(B), the Amended Complaint does not plausibly allege that Reid requested not to work on Thursday as a reasonable accommodation for her disability. It only alleges that Reid told Dellaposta and Anh-Tuan on August 24, 2022 that "she was keeping Thursdays to visit her grandfather." (Am. Compl. ¶ 55.) Neither this allegation nor any other allegation in the Amended Complaint explains why Reid's visits to her grandfather on Thursdays, or even visits to her grandfather in general, would enable Reid "to perform the

essential functions of" her job as a security guard at an Amazon warehouse or "to enjoy equal benefits and privileges of employment." *Noll*, 787 F.3d at 94 (addressing the definition of a reasonable accommodation). But even if the Amended Complaint plausibly alleged that Reid required Thursday visits to her grandfather to perform essential functions of her job or to enjoy the equal benefits and privileges of her job, the Amended Complaint does not allege why Reid could *only* visit her grandfather on Thursdays—rather than on her other days off during each week. The ADA does not require Metro One to provide Reid with the exact accommodation she requested, but only that it provide a *reasonable* accommodation for her disability. *Noll*, 787 F.3d at 95  ("[E]mployers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee.") The Amended Complaint therefore fails to plausibly plead that Reid requested a reasonable accommodation for her disability in the form of a request to not work on Thursdays so that she could visit her grandfather.

Accordingly, the Amended Complaint fails to plead a plausible ADA failure-to-accommodate claim both because it does not offer factual allegations showing that Metro One knew about or reasonably should have known about Reid's disability or that Reid ever requested that Metro One make a reasonable accommodation for her disability. Accordingly, Reid's ADA failure-to-accommodate claim is dismissed.

## C.  The ADA Associational Discrimination Claim

Metro One argues that the Amended Complaint fails to plead an ADA associational discrimination claim because it does not allege that Metro One terminated Reid's employment under any of the three circumstances recognized by the Second Circuit as giving rise to such a claim. (Mem. at 14–15.) Metro One also asserts that the ADA's prohibition on associational discrimination does not require an employer to provide a reasonable accommodation to an

employee without a disability who is associated with a person with a disability and that, in any event, Reid did not request a reasonable accommodation. (*Id.* at 15.)

In opposition, Reid argues that she requested a reasonable accommodation—to be excused from work on Thursdays—because of her grandfather's disability as well as her own, and that Metro One refused to accommodate that request because it "concluded that Plaintiff would be inattentive." (Resp. at 16.)

On reply, Metro One reiterates the arguments made in its moving brief and makes two additional arguments. (Reply at 5–6.) First, it asserts that the Amended Complaint's allegations that Reid "wanted to keep Thursday for her grandfather who was diagnosed with cancer and for herself to have a day to relieve herself from her mental issues" is inconsistent with "initial allegations and the language in the texts messages" that Reid sent to Dellaposta and Anh-Tuan in which she accused them of cutting her hours to fewer than 40 hours a week. (*Id.*) Second, Metro One accuses Reid of engaging in "wild speculation and conjecture" in arguing that Metro One denied Reid's request to not work on Thursdays on the basis that it had "concluded Plaintiff would be inattentive," and argues that this theory is not pled in the Amended Complaint. (*Id.* at 6.)

The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To state an ADA associational discrimination claim, a plaintiff must show:

> 1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467–68 (2d Cir. 2019) (quoting *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016)). With respect to the fourth element of the claim, the Second Circuit has recognized three circumstances that give rise to "a reasonable inference that the disability of a relative or associate was the determining factor in the employer's decision":

> 1) "expense," in which an employee suffers adverse action because of his association with a disabled individual covered by the employer's insurance, which the employer believes (rightly or wrongly) will be costly; 2) "disability by association," in which the employer fears that the employee may contract or is genetically predisposed to develop the disability of the person with whom he is associated; and 3) "distraction," in which the employer fears that the employee will be inattentive at work due to the disability of the disabled person.

*Graziadio*, 817 F.3d at 432 (quoting *Larimer v. Int'l Bus. Machines Corp.*, 370 F.3d 698, 700 (7th Cir. 2004)).

The Amended Complaint fails to plead an ADA associational discrimination claim because it is devoid of any allegation that Metro One terminated Reid's employment under any of the three circumstances that could raise a reasonable inference that her grandfather's cancer was a determining factor in Metro One's decision to end her employment.

First, the Amended Complaint does not allege that Metro One terminated Reid because it concluded that Reid would be inattentive at work, as Reid argues for the first time in her opposition to Metro One's Motion to Dismiss. (*See* Resp. at 16.) As noted above, a court need not consider a theory of liability that is not pled on the face of the complaint and is raised for the first time in opposition to a motion to dismiss. *See Generation Next Fashions Ltd., NA.*, 698 F. Supp. 3d at 677; *see also Pandozy*, 518 F.Supp.2d at 554 n.1 (collecting cases).

Second, even if I were to consider Reid's new theory that she was terminated because Metro One concluded she would be inattentive at work due to her grandfather's cancer, there are

no factual allegations in the Amended Complaint to support this theory as a plausible basis for an ADA associational discrimination claim. The Amended Complaint does not include a single allegation that Metro One's termination of Reid's employment as a security guard at an Amazon warehouse was in any way influenced by the fact that her grandfather was suffering from cancer or that Metro One had concluded that Reid would be inattentive at work on account of her grandfather's illness. Instead, the only allegations in the Amended Complaint regarding Metro One's knowledge of Reid's grandfather's cancer are as follows: (1) that during a three-way phone call on August 24, 2022, Reid informed Dellaposta and Anh-Taun that "she could not work on Thursdays because she was keeping Thursdays to visit her grandfather"; and (2) that she "wanted to spend more time with her grandfather" due to his cancer diagnosis. (Am. Compl. ¶ 55.) These allegations are plainly insufficient to plausibly allege that Reid's termination "occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision" as required for the fourth element of an ADA claim for associational discrimination. *Kelleher*, 939 F.3d at 468.

For all of the aforementioned reasons, Reid's ADA associational discrimination claim is dismissed under Rule 12(b)(6).

### D. The ADA Retaliation Claim

Metro One seeks dismissal of Reid's ADA retaliation claim, arguing that: (1) the Amended Complaint fails to allege that Reid "engaged in any protected activity under the ADA or that Defendants were aware of such activity," including in the form of any request for reasonable accommodation; and (2) the Amended Complaint has failed "to allege any causal connection between an adverse employment action and a protected activity," much less any

allegations that plausibly show "that but for Plaintiff's alleged protected activity she would not have been fired." (Mem. at 17–18.)[10]

In opposition, Reid argues that, at the motion to dismiss stage, the temporal proximity of between her alleged protected activities—her request for a reasonable accommodation in the form of not being scheduled to work on Thursdays and her complaints about the denial of that request—and the adverse action she suffered in the form of the termination of her employment is sufficient to withstand a Rule 12(b)(6) analysis. (Resp. at 20–22.)

On reply, Metro One asserts that any retaliation claim premised on Reid's termination must fail because Reid has failed to provide "proof that she was terminated." (Reply at 6.) It also argues that Reid's argument that she was terminated for failure to see Dellaposta's call over the weekend is inconsistent with her allegation that she worked Sunday, Monday, and Tuesday of the week of August 24, 2022 and that she was given her entire work schedule at the start of August. (*Id.* at 6–7.)

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA and that it is unlawful for an employer "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by" the ADA. 42 U.S.C. § 12203(a)–(b).

---

[10] As discussed, I do not reach Metro One's argument that Reid's EEOC Complaint did not place Metro One on notice that Reid engaged in protected activity by requesting an accommodation when asking not work on Thursdays so that she could visit her ill grandfather and receive support for her own mental health issues because that document is not attached to the Amended Complaint and no party has provided it, much less shown that it is incorporated by reference in or integral to the Amended Complaint. *See supra* note 9.

To state an ADA retaliation claim, a complaint must plausibly allege (1) that a plaintiff "engag[ed] in protected activity"; (2) that "the alleged retaliator knew that plaintiff was involved in protected activity"; (3) that "an adverse decision or course of action was taken against plaintiff"; and (4) that "a causal connection exists between the protected activity and the adverse action." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023). With respect to the first element, a plaintiff may plead engagement in protected activity by plausibly alleging that the plaintiff "possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated" the ADA. *Sharikov*, 103 F.4th at 170 (quoting *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)). With respect to the fourth element, the complaint must plausibly allege that "'but for' the disability, the adverse action would not have been taken." *Id.* A complaint may plausibly allege causation directly either through allegations of "retaliatory animus" or "indirectly, by showing that the protected activity was followed closely by discriminatory treatment." *Id.* (quoting *Tafolla*, 80 F.4th at 125); *see also Tafolla*, 80 F.4th at 125–26 (finding that a causal connection can also be indirectly alleged through allegations "that the protected activity was closely followed in time by the adverse employment action") (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)).

The Amended Complaint does not plausibly plead that Reid engaged in a protected activity or that a causal connection exists between any alleged protected activity and the challenged adverse action—Metro One's termination of Reid's employment. *Sharikov*, 103 F.4th at 170. The Amended Complaint does not plausibly allege that Reid's request not to be scheduled to work on Thursdays and complaint regarding the denial of that request were protected activities. Rather, the Amended Complaint alleges that Reid communicated with her Metro One supervisors on August 24, 2022 on three occasions, but does not allege that either

Reid's request not to work on Thursdays or her disagreement with Metro One's decision not to grant her request were complaints based on Reid's good faith, reasonable belief that she had been denied an accommodation for a disability or faced any disparate treatment, retaliation, hostile work environment, or any other conduct that would violate the ADA. *See* Am. Compl. ¶ 55; Three-Way Text Msgs.; *Sharikov*, 103 F.4th at 170. Similarly, the Amended Complaint does not allege that any of the emails, calls, and text messages even communicate a concern that Reid was experiencing any disparate treatment, retaliation, a hostile work environment, or any other conduct that would violate the ADA.

Because the Amended Complaint does not plausibly allege that Reid engaged in any protected activities, it does not plausibly allege a causal connection between a protected activity and the alleged adverse action. Accordingly, since the Amended Complaint does not plausibly plead the first or fourth elements of an ADA associational discrimination claim, this claim is dismissed under Rule 12(b)(6).

E.  State Law Claims

Metro One argues that the Amended Complaint has failed to plead a plausible state law claims for disability discrimination, associational discrimination, and retaliation for the same reasons that it has failed to plead analogous claims under federal law. (*Compare* Mem. at 6–12, with 12 (disability discrimination); *id.* at 13–15, with 16 (associational discrimination); *see also id. at* 16–18 (retaliation).)

A district court "may decline to exercise supplemental jurisdiction over a claim [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors

will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023).

Here, the Amended Complaint fails to state any federal claims, and the federal claims are therefore dismissed. *See supra* Discussion §§ II.B–D. The Amended Complaint does not assert any independent basis for subject matter jurisdiction over Reid's state law claims, such as diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* Am. Compl. ¶¶ 12–13.) Because this case is in the early stages of litigation, pursuant to my discretion under 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over Reid's state law claims. *Tang v. Grossman*, No. 22-464-cv, 2023 WL 2229366, at *3 (2d Cir. Feb. 27, 2023) (summary order); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d at 262 (2d Cir. 2006). Accordingly, Reid's state law claims are dismissed without prejudice.

## CONCLUSION

For the reasons addressed above, Metro One's Motion to Dismiss (ECF No. 17) is granted in its entirety. The Amended Complaint's federal claims are dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. Under 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over the Amended Complaint's claims under the NYSHRL, and those claims are therefore dismissed without prejudice.

The Amended Complaint is dismissed. The Clerk of Court shall enter judgment and close this case.

Dated:  Central Islip, New York
        September 3, 2025

          */s/ Nusrat J. Choudhury*
          NUSRAT J. CHOUDHURY
          United States District Judge